**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARVIN DOVBERG,<br><br>Plaintiff,<br><br>v.<br><br>HALLER ENTERPRISES, INC.,<br><br>Defendant. | Civil Action No. 5:26-cv-04286-JFL |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**


Michael P. Daly (PA ID 86103)
Michelle A. Paninopoulos (PA ID 329738)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Phone: 215-988-2700
Fax: 215-988-2757
michael.daly@faegredrinker.com
michelle.paninopoulos@faegredrinker.com

Matthew M. Morrissey (*pro hac vice* forthcoming)
Stacy N. Massey (*pro hac vice* forthcoming)
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
matthew.morrissey@faegredrinker.com
stacy.massey@faegredrinker.com

*Attorneys for Defendant*
*Haller Enterprises, Inc.*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ....... ii

INTRODUCTION ....... 1

STATEMENT OF FACTS ....... 1

STATEMENT OF THE QUESTIONS INVOLVED ....... 2

SUMMARY OF ARGUMENT ....... 3

ARGUMENT ....... 3

I. Legal Standard ....... 3

II. Plaintiff's Claims Both Fail Because Text Messages Are Not "Telephone Calls" ....... 4

III. Plaintiff's Do-Not-Call Claim Fails Because His Cellphone Is Not "Residential" ....... 11

IV. Plaintiff's Caller ID Claim Fails Because There Is No Private Right of Action ....... 16

CONCLUSION ....... 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allied World Surplus Lines Ins. Co. v. Climax Tech. Co.*,
808 F. Supp. 3d 696 (E.D. Pa. 2025) ........ 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016), *aff'd on other grounds,* 855 F.3d 793 (7th Cir. 2017) ........ 5

*Buck v. Harton*,
33 F. Supp. 1014 (M.D. Tenn. 1940) ........ 15

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ........ 11

*Card v. R.J. Reynolds*,
No. 26-0433, 2026 WL 2673068 (M.D.N.C. Sept. 3, 2026) ........ 4, 8

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022) ........ 14, 16

*Cole v. C/T Install America, LLC*,
No. 25-3531, 2026 WL 916582 (E.D. Pa. Mar. 23, 2026) ........ 11

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992) ........ 5

*Conrad v. Hart Consumer Prods.*,
No. 24-0307, 2026 WL 2741623 (N.D. Ala. Sep. 16, 2026) ........ *passim*

*Cunningham v. Creative Edge Mktg. LLC*,
No. 19-0669, 2021 WL 2792353 (E.D. Tex. June 16, 2021) ........ 12

*Cunningham v. Politi*,
No. 18-0362, 2019 WL 2519702 (W.D. Tex. April 26, 2019) ........ 12

*Cunningham v. Spectrum Tax Relief, LLC*,
No. 16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017), *rept. and rec. adopted*, 2017 WL 3220411 (M.D. Tenn. July 28, 2017) .......... 12

*Cunningham v. Sunshine Consulting Grp., LLC*,
No. 16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *rept. and rec. adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018) .......... 13

*Davis v. CVS Pharm., Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .......... 4, 5, 7

*De Asencio v. Tyson Foods, Inc.*,
500 F.3d 361 (3d Cir. 2007) .......... 22

*Dobronski v. SelectQuote Ins. Servs.*,
462 F. Supp. 3d 784 (E.D. Mich. 2020) .......... 17

*Dobronski v. SunPath Ltd.*,
No. 19-13094, 2020 WL 8840311 (E.D. Mich. Jul. 7, 2020) .......... 17

*Dobronski v. Tobias & Assocs., Inc.*,
No. 23-10031, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) .......... 17

*Dobronski v. Total Ins. Brokers, LLC*,
No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) .......... 17

*Dobronski v. Transamerica Life Ins. Co.*,
347 Mich. App. 92 (2023) .......... 17, 19

*Dr. Bonham's Case*, 77 Eng. Rep. 638 (C.P. 1610) .......... 14

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......... 8, 11

*Gaker v. Q3M Ins. Sols.*,
No. 22-0296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) .......... 12

*Griffin v. Am.-Amicable Life Ins. Co. of Tex.*,
No. 24-0243, 2024 WL 4333373 (D. Or. Sept. 27, 2024) .......... 16

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026) .......... 4

*Holy Trinity Church v. United States*,
143 U.S. 457 (1892) .......... 22

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) .......... 10

*Hughey v. JMS Dev. Corp.*,
78 F.3d 1523 (11th Cir. 1996) .......... 15

*Internicola v. MortgagePros LLC*,
No. 25-1613, 2026 WL 2160936 (M.D. Fla. June 10, 2026) .......... 4

*Irvin v. Sonic Indus. Servs., LLC*,
No. 25-0242, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) .......... 4

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026) .......... 4, 9

*Jimenez v. Quarterman*,
555 U.S. 113 (2009) .......... 5

*Law v. Siegel*,
571 U.S. 415 (2014) .......... 14

*Lee v. Loandepot.com, LLC*,
No. 14-1084, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) .......... 16

*Lexmark Int'l, Inc. v. Static Controls Components, Inc.*,
572 U.S. 118 (2014) .......... 21

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 5, 10

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 10

*McNeil v. Time Ins. Co.*,
205 F.3d 179 (5th Cir. 2000) .......... 15

*Meyer v. Cap. All. Grp.*,
No. 15-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) .......... 17

*Michigan v. Bay Mills Indian Cmty.*,
572 U.S. 782 (2014) .......... 9

*Newell v. Children's Dental Health Assocs., LLC*,
No. 25-5238, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026) .......... 11

*Newell v. JR Capital, LLC*,
791 F. Supp. 3d 571 (E.D. Pa. 2025) .......... 21

*Nielsen v. Preap*,
586 U.S. 392 (2019) .......... 7

*OWCP v. Newport News Shipbuilding & Dry Dock Co.*,
514 U.S. 122 (1995) .......... 9

*Pero v. Brown-Daub Chevrolet of Nazareth*,
No. 25-7016, 2026 WL 1747214 (E.D. Pa. June 17, 2026) .......... 11

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 25-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......... 4, 7

*Radvansky v. Kendo Holdings, Inc.*,
No. 23-0214, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026) .......... 4

*Richards v. Fashion Nova LLC*,
No. 25-1145, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026) .......... 4, 6

*Richards v. Shein Distribution Corp.*,
No. 25-1385, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026) .......... 4, 7

*Rodriguez v. U.S.*,
480 U.S. 522 (1987) (per curiam) .......... 10

*Rush v. Selectquote Ins. Servs.*,
No. 25-1145, 2026 WL 2495598 (W.D. Mo. July 30, 2026) .......... 4

*Sandifer v. U.S. Steel Corp.,*
571 U.S. 220 (2014) .......... 5

*Sayed v. Naturopathica Holistic Health, Inc.*,
No. 25-0847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .......... 4, 5, 6

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019) .......... 12, 13, 14

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) .......... 14

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) .......... *passim*

*Stockdale v. Skymount Property Group, LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026) .......... 4

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .......... 9

*Tom v. Delancey St. Grp. LLC*,
No. 26-1150, 2026 WL 2255107 (E.D.N.Y. Aug. 5, 2026) .......... 16

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979) .......... 19

*Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*,
505 U.S. 214 (1992) .......... 22

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
935 F.3d 187 (3d Cir. 2019) .......... 3

*Worsham v. Travel Options, Inc.*,
No. 16-2133, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) .......... 17

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .......... 18

**Statutes, Rules & Regulations**

47 C.F.R. § 64.1200 .......... *passim*

47 C.F.R. § 64.1601 .......... *passim*

47 U.S.C. § 227 .......... *passim*

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 503, 132 Stat. 348, 1091-93 (2018) .......... 9

Fed. R. Civ. P. 12(c) .......... 1, 3

Pub. L. No. 111-331, 124 Stat. 3572 (Dec. 22, 2010) .......... 19

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
7 FCC Rcd. 8752 (1992) .......... 19

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (2003) .......... 17, 20

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
19 FCC Rcd. 19215 ¶ 9 & n.32 (2004) .......... 15

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
23 FCC Rcd. 9779 (2008) .......... 12

**Other Authorities**

Automated Telephone Consumer Protection Act, S. Rep. No. 102-178, 102d Cong. at 9 (1991) .......... 13

*Hr'g Before the Subcomm. on Commc'ns of the S. Comm. on Com., Sci., & Transp.*, 102d Cong. 6, 43 (1991) .......... 14

*Hr'g on H.R. 628, H.R. 2131, & H.R. 2184 Before the Subcomm. on Telecomms. & Fin. of the H. Comm. on Energy & Commerce*, 101st Cong. 2 (1989).......... 15

*Hr'g Before the Subcomm. on Telecomms. & Fin. of the H. Comm. On Energy & Com.*, 102d Cong. 113 (1991) .......... 14

H.R. Rep. No. 102-317 (1991).......... 14

U.S. Const. Amendment V.......... 15

U.S. Const. Amendment XIV .......... 15

Webster's Ninth New Collegiate Dictionary (9th ed. 1988).......... 6, 13

Pursuant to Federal Rule of Civil Procedure 12(c), Haller Enterprises, Inc. ("Haller") respectfully moves for judgment on the pleadings because Marvin Dovberg ("Plaintiff") has not alleged facts that would state a claim upon which relief can be granted. Pursuant to Section II.F.5 of the Court's Policies & Procedures, Haller respectfully requests oral argument on this Motion.

## INTRODUCTION

Plaintiff has asserted two claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, arising from alleged violations of federal Do-Not-Call and Caller ID regulations. *See* 47 C.F.R. § 64.1200(c) (Do-Not-Call regulations); *id.* § 64.1601(e) (Caller ID regulations). Specifically, Plaintiff alleges that Haller sent two text messages that violated the TCPA because his number was on the National Do-Not-Call Registry ("NDNCR") (Count I) and because the text messages were sent with Caller ID information that was accurate but incomplete (Count II). Because those claims fail as a matter of law even if all of Plaintiff's allegations are taken as true, Haller now moves for judgment on the pleadings.

## STATEMENT OF FACTS

Plaintiff alleges the following facts, which are taken as true for present purposes only:

- Haller is a provider of plumbing, HVAC, and electrical services. Compl. ¶ 5.
- Plaintiff had been a Haller customer until the summer of 2022. *Id.* ¶ 23.
- On June 4, 2026, Haller or its vendor sent him two text messages. *Id.* ¶ 22.[1]
- Both texts mentioned a monetary incentive for referring customers to Haller. *Id.* ¶ 24.

[1] Although the Court must take the allegations as true for the purposes of this Motion, Haller's records suggest that this allegation is inaccurate. *See infra*. Specifically, Haller's records indicate that the text messages were sent on different dates, and that the exception for communications made pursuant to an "established business relationship" will preclude Plaintiff's Do-Not-Call claim if this case continues beyond the pleadings stage. *See* 47 C.F.R. § 64.1200(c), (f)(5), (f)(15).

- Plaintiff had not consented to receiving telemarketing from Haller. *Id.* ¶ 21.
- Plaintiff had placed his number on the NDNCR before the texts were sent. *Id.* ¶ 4.
- The greeting in both texts referred to Plaintiff by his first name – "Marvin." *Id.* ¶ 22.
- Both texts displayed Haller's number (717-482-9669) on Plaintiff's phone. *Id.*
- Both texts also identified Haller by name as the sender. *Id.*
- Specifically, the first said, "this is Haller Enterprises." *Id.*
- Similarly, the second text said, "Haller Enterprises here!" *Id.*
- While preparing the Complaint, however, Plaintiff's counsel performed a "dip" of the Caller ID information stored by the sender's telecommunications carrier. *Id.* ¶ 27.
- That information correctly identified the sender's number as 717-482-9669. *Id.*
- However, it identified the sender as "MIDDLETOWN, PA" instead of Haller. *Id.*

Those are all of the allegations that are relevant here; the balance of the Complaint consists of allegations that are not relevant or conclusions that are not taken as true for present purposes. Although Haller has filed an Answer, this Motion relies only on the facts alleged in the Complaint.

## STATEMENT OF THE QUESTIONS INVOLVED

- Whether Plaintiff's Do-Not-Call and Caller ID claims both fail because text messages are not "telephone calls" for purposes of the private right of action under 47 U.S.C. § 227(c)(5).

  **Suggested Answer:** Yes. *See* Argument § II.

- Whether Plaintiff's Do-Not-Call claim fails because he did not receive the text messages on a "residential" telephone number.

  **Suggested Answer:** Yes. *See* Argument § III.

- Whether Plaintiff's Caller ID claim fails because there is no private right of action for

violations of 47 C.F.R. § 64.1601(e) and because Haller complied with it in any event.

**Suggested Answer:** Yes. *See* Argument § IV.

## SUMMARY OF ARGUMENT

Plaintiff's claims fail as a matter of law for three reasons. First, both claims depend on Plaintiff having a private right of action under the TCPA. But he doesn't, as the private right of action in Section 227(c)(5) only arises if a plaintiff has received "telephone calls." Here, the Plaintiff alleges that he received text messages, not telephone calls. Although some courts have held that text messages should be treated like telephone calls for purposes of claims under Section 227(c)(5), the more persuasive authority—including a recent appellate ruling squarely addressing the merits of the issue—is to the contrary. *See* Argument § II. Second, Plaintiff's Do-Not-Call claim fails because he received the messages on a cellphone rather than a "residential" number. *See id.* § III. And third, his Caller ID claim fails because the messages complied with 47 C.F.R. § 64.1601(e) and he has no private right of action for alleged violations of that regulation anyway. *See id.* § IV. It follows that Haller is entitled to judgment on the pleadings.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 12(c) authorizes courts to enter judgment on the pleadings. Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are analogous to motions to dismiss, with the main difference being that one is filed after the pleadings close and the other is not. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *Allied World Surplus Lines Ins. Co. v. Climax Tech. Co.*, 808 F. Supp. 3d 696, 699 (E.D. Pa. 2025). It follows that the same standard applies to both: factual allegations are taken as true and viewed in the light most favorable to the plaintiff, but conclusory statements and legal conclusions are not.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must therefore allege facts that make a claim not just possible but plausible. *Id.* at 555, 570; *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026).

## II. <u>Plaintiff's Claims Both Fail Because Text Messages Are Not "Telephone Calls"</u>

Plaintiff has asserted two claims: one for an alleged violation of Do-Not-Call regulations (Count I) and another for an alleged violation of federal Caller ID regulations (Count II). Both fail as a matter of law, however, because they rely on a private right of action in 47 U.S.C. § 227(c)(5), which applies only to "telephone calls." That matters because Plaintiff received ***text messages***. Although some courts have held that text messages should be treated as telephone calls, the more persuasive authorities—and the only appellate ruling to squarely address the issue rather than defer to the FCC—have held that they should not. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026); *see also, e.g.*, *Conrad v. Hart Consumer Prods.*, No. 24-0307, 2026 WL 2741623, at *9 (N.D. Ala. Sep. 16, 2026); *Card v. R.J. Reynolds*, No. 26-0433, 2026 WL 2673068, at *3 (M.D.N.C. Sept. 3, 2026); *Rush v. Selectquote Ins. Servs.,* No. 25-1145, 2026 WL 2495598, at *4 (W.D. Mo. July 30, 2026); *Internicola v. MortgagePros LLC,* No. 25-1613, 2026 WL 2160936, *7 (M.D. Fla. June 10, 2026); *Irvin v. Sonic Indus. Servs., LLC*, No. 25-0242, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1373 (M.D. Fla. 2026); *Richards v. Shein Distribution Corp.*, No. 25-1385, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026); *Richards v. Fashion Nova LLC*, No. 25-1145, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026); *Stockdale v. Skymount Property Group, LLC*, 825 F. Supp. 3d 622, 627 (N.D. Ohio 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-2811, 2026 WL 456919, at *5 (N.D. Ga. Feb. 17, 2026); *Radvansky v. Kendo Holdings, Inc.*, No. 23-0214, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026); *Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1276 (N.D. Fla. 2025); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-0847, 2025 WL 2997759, at *2 (M.D.

Fla. Oct. 24, 2025). Those courts are right for at least nine reasons.

***First***, the normal meaning of the term "telephone call" does not include text messages. Under the ordinary-meaning canon, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). In light of that, the analysis "begins with the plain language of the statute," *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). And if the statutory language is unambiguous, the analysis "ends there as well." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

Here, referring to text messages as "telephone calls" would not be common parlance. Ordinary people understand that those are separate and distinct things. As one court explained:

> No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner.

*Davis*, 797 F. Supp. at 1273; *see also Sayed*, 2025 WL 2997759, at *2 ("[I]n common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication. . . ."); *Conrad*, 2026 WL 2741623, at *9 ("The court cannot say that the ordinary meaning of 'telephone calls' in 1991 would have included . . . text messages.").

***Second***, Congress must have had that ordinary usage in mind when it drafted the TCPA in 1991 because text messages did not even exist in 1991. *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 (N.D. Ill. 2016), *aff'd on other grounds,* 855 F.3d 793 (7th Cir. 2017) (noting that first text message was sent on December 3, 1992). Under the fixed-meaning canon, "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024); *see also Sandifer v. U.S. Steel Corp.* 571 U.S. 220, 227 (2014) ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted.").

At the time of the TCPA's enactment, "telephone" meant "[a]n instrument for reproducing

sounds at a distance,"[2] and (in this context) "call" meant "to get or try to get into communication by telephone."[3] The statute also pairs "call" with "voice," which meant spoken communications.[4] It follows that "telephone call" meant oral communication over the telephone. A text message, by contrast, is a written communication through a texting platform. Indeed, text messages can be sent from one computer to another with no phone at either end. There is no reason to believe that Congress had text messages—which would not even exist until the following year—in mind when it used the term "telephone call." *Conrad*, 2026 WL 2741623, at *9 ("Of course, text messages didn't exist in 1991, so the question is off at first blush.")

***Third***, that common parlance has not changed since the TCPA was enacted because text messages and telephone calls are fundamentally different forms of communication. One obvious difference is that text messages do not transmit voices. *See, e.g.*, *Steidinger*, 182 F.4th at 536. Other differences are less obvious but no less important in the context of this Do-Not-Call claim: texts do not require that phones be picked up or that phone lines be tied up. As a result, they "do not present the same type of nuisance that phone calls do." *Richards,* 2026 WL 847568, at *3. More importantly for present purposes, though, they are best viewed not as a "telephone call," but as a fundamentally different kind of communication. *See, e.g.*, *Sayed*, 2025 WL 2997759, at *2.

***Fourth***, the use of different language within Section 227(c) confirms that Congress did not

---

[2] *Telephone*, Webster's Ninth New Collegiate Dictionary (9th ed. 1988) (defining "telephone" as "an instrument for reproducing sounds at a distance" and "one in which sound is converting electrical impulses for transmission by wire").

[3] *Call*, Webster's Ninth New Collegiate Dictionary (9th ed. 1988) (defining "call" as "to get or try to get into communication by telephone – often used with *up*.").

[4] *Voice*, Webster's Ninth New Collegiate Dictionary (9th ed. 1988) (defining "voice" as including the "sound produced by vertebrates by means of lungs, larynx, or syrinx"; a "musical sound produced by the vocal cords and resonated by the cavities of head and throat"; and the "expiration of air with the vocal cords drawn close so as to vibrate audibly. . . .").

mean for text messages to be treated as "telephone calls." Specifically, Section 227(c)(1) concerns not just "telephone ***calls***" but any "telephone ***solicitation.***" 47 U.S.C. § 227(c)(1). That term is defined as "a telephone call ***or message***." *Id.* § 227(a)(4) (emphasis added). If "telephone call" already included "message," including "or message" in the definition of "telephone solicitation" would have been unnecessary.

That would violate the surplusage canon, which requires that courts try to give effect to every word a legislature has chosen to use. *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 414 (2019). Applying this canon, the Seventh Circuit held that "[t]he best reading of § 227(c)(5) is therefore that it provides a narrower remedy than recovery for all forms of telephone solicitation; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages)." *Steidinger*, 182 F.4th at 536; *see also Davis*, 797 F. Supp. 3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'"); *Richards*, 2026 WL 847584, at *3 ("§ 227(c)'s use of 'telephone call' to describe a right of action but 'telephone solicitations' to describe an affirmative defense" confirms that Congress "does not use these terms interchangeably"); *Radvansky*, 2026 WL 456919, at *3 ("construing these distinct phrases identically would render superfluous the different terms Congress chose to use"); *Conrad*, 2026 WL 2741623, at *10 ("[D]eeming a text message to be a 'telephone call' would duplicate the term 'message' or give it no consequence.").

***Fifth***, the omitted-case canon similarly weighs against Plaintiff's reading of the statute. Although the terms "telephone solicitation" and "message" are used elsewhere in the statute, the private right of action in Section 227(c)(5) applies only to subscribers who receive more than one

"telephone call" in a twelve-month period. Reading "telephone call" as including text messages would blur lines that were deliberately drawn by Congress. *Conrad*, 2026 WL 2741623, at *10 ("The omitted-case canon requires the court to give that choice meaning. If Congress chose to give the private right of action only to persons who received 'telephone calls,' not 'messages' or 'solicitations,' the court must respect that choice.").

***Sixth***, the use of different wording ***outside*** of Section 227(c) also underscores this point. For example, Section 227***(b)*** "prohibits a wide range of conduct," including communications to paging and facsimile devices, and creates a private right of action that is "broadly framed" as allowing claims based on any conduct that violates "this subsection or the regulations prescribed under this subsection." *Steidinger*, 182 F.4th at 539 (quoting 47 U.S.C. § 227(b)(3)). Similarly, Section 227***(d)*** regulates the sending of faxes—i.e., text-based communications over phone lines—by referring to them not as "calls" but as "messages." *Id.* at 537 (citing 47 U.S.C. § 227(d)). Section 227(c)(5), on the other hand, is narrowly framed as allowing claims only by individuals who have "received more than one telephone call." 47 U.S.C. § 227(c)(5).

It makes sense to treat telemarketing in Section 227(c) differently from autodialing in Section 227(b) and faxing in Section 227(d) because the latter involve different policy concerns. The language of Section 227(c)(5) reflects a decision to limit the right of action to just one thing: unwanted voice calls from telemarketers. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 406 (2021) (declining to "expand the liability that Congress imposed" beyond the law's "clear commands"). As one court explained, "if it had been the intent to include all types of communications, Congress more simply could have used the broader term 'call' as it did in § 227(b), rather than 'telephone call' as it did in § 227(c)(5)." *Card*, 2026 WL 2673068, at *3. The meaningful-variation canon instructs that, if a legislature uses different terms in different places, courts presume it meant

different things. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022). Reading "telephone call" as including text messages would blur lines that were deliberately drawn by Congress.

***Seventh***, Congress never amended Section 227(c)(5) to expand the private right of action beyond "telephone calls." Despite amending the TCPA four times—in 2005, 2010, 2015, 2018—Congress never amended the private right of action in Section 227(c)(5). That inaction stands in stark contrast to changes it has made elsewhere, specifically a 2018 amendment to Section 227(e) that replaced "a call made using a telecommunications service or IP-enabled voice service" with "a call made using a voice service ***or a text message sent using a text messaging service***." *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 503, 132 Stat. 348, 1091-93 (2018) (emphasis added).

That amendment would not have been necessary if "a call made using a voice service" and "a text message sent using a text messaging service" meant the same thing. If Congress thought "telephone call" included both voice calls and text messages, it could simply have used the latter. This 2018 amendment shows that Congress knows how to reach telephone calls and text messages when it wants to: identifying each kind of communication separately. That it chose not to do that in Section 227(c)(5) reinforces that Section 227(c)(5) does not apply to text messages. *See James*, 2026 WL 1052437, at *4 (explaining that the addition of "text message" elsewhere in the TCPA showed that § 227(c)(5) does not include text messages).

***Eighth***, the supposedly "remedial" nature of the TCPA cannot override its plain meaning. As the Supreme Court has observed, the remedial-statute chestnut is often the "last redoubt of losing causes." *OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995); *see also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) (noting that "Congress wrote the statute it wrote" and courts do not have "roving license . . . to disregard clear language simply

on the view that . . . Congress 'must have intended' something broader."); *Rodriguez v. U.S.*, 480 U.S. 522, 526 (1987) (per curiam) ("[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.") (emphasis in original).

***Finally***, the decisions that have treated text messages like telephone calls are unpersuasive. Courts that addressed this issue before 2024 can be excused, as they no doubt felt obliged to follow whatever the prevailing opinion of the FCC happened to be at that moment. But that changed with the Supreme Court's decisions in *Loper Bright Enterprises v. Raimond,* 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), which did away with the practice of deferring to an administrative agency's attempts to interpret a statute. After those decisions, courts analyze statutes according to the canons of construction and reach the result "the court would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 373.

The courts that have reached this issue since then have no excuse, however. What's more, their reasoning is flawed in ways that simply do not withstand scrutiny. Plaintiffs often point to the Ninth Circuit's decision in *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026), for support for the proposition that text messages can qualify as "telephone calls." But *Howard* is not relevant here, as it analyzed whether text messages with videos files trigger Section 227(b)'s restriction on using autodialers to send "artificial or prerecorded voices," not whether Section 227(c)'s private right of action applies to Do-Not-Call violations. *Howard*, 164 F.4th at 1120 ("The question presented in this case is whether these provisions should be construed to also prohibit, absent prior express consent, the sending of text messages ***containing video files***, even when the recipient must affirmatively act, after receiving the message, to choose to listen to the video.") (emphasis added). What's more, its statements about the meaning of the word "call" were

both unnecessary (and therefore dicta) and unnecessarily deferential to the FCC. *Id.* at 1124–25.

Three local decisions also warrant discussion. *See Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 WL 1747214, at *2–4 (E.D. Pa. June 17, 2026); *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026); *Cole v. C/T Install America, LLC*, No. 25-3531, 2026 WL 916582 (E.D. Pa. Mar. 23, 2026). As for *Pero*, it analyzed the wrong statutory provision; although the plaintiff asserted a Do-Not-Call claim, the court analyzed whether text messages are "telephone ***solicitations***" under Section 227(c)(1)–(4), not whether they are "telephone ***calls***" under Section 227(c)(5). *Pero*, 2026 WL 1747214, at *4. And as for *Newell* and *Cole*, they relied on a statement in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), about it having been "undisputed" that text messages qualify as telephone calls. *See Newell*, 2026 WL 927378 at *5; *Cole*, 2026 WL 916582 at *1. But the Supreme Court did not say that is "indisputable." Rather, it said only that the parties in that case had not disputed it. *Campbell-Ewald Co.,* 577 U.S. at 156. If anything, statements like that should be read as a suggestion that an issue ***should*** be disputed in future cases, which not surprisingly is exactly what has happened. *See Facebook,* 592 U.S. at 400 n.2 ("***Neither party*** disputes that the TCPA's prohibition also extends to sending unsolicited text messages. . . . We therefore ***assume*** that it does without considering or resolving that issue. . . .") (emphasis added).

Rather than perpetuate those errors, the Court should adopt the reasoning of a growing number of courts nationwide—most notably the Seventh Circuit's recent decision in *Steidinger*—and should hold that Section 227(c)(5) does not create a right of action for receipt of text messages.

## III. <u>Plaintiff's Do-Not-Call Claim Fails Because His Cellphone Is Not "Residential"</u>

Even if Plaintiff had a right of action under Section 227(c)(5), his Do-Not-Call claim would still fail as a matter of law because his own allegations show that he was never called on a "residential" number, which is the only sort of number that is covered by the Do-Not-Call rules.

*See* 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect *residential* telephone subscribers' privacy rights[.]") (emphasis added); *see also In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (2008) ("[The NDNCR] applies to 'residential subscribers' and does not preclude calls to businesses."); 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.") (emphasis added). That is true for two reasons.

***First***, cellphones should not be considered "residential" no matter how they are used. Although courts once widely assumed that wireless phones can qualify as "residential" for purposes of the TCPA, a more recent line of authority has scrutinized that issue and held otherwise. That began when the Eastern District of Pennsylvania went out of its way—despite the defendant's failure to respond to requests for admission—to examine the question. *See Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019). Since then, several courts have found that the Do-Not-Call rules were meant to protect privacy within a home, and that calls to wireless phones do not present the same privacy concerns. *See, e.g.*, *Gaker v. Q3M Ins. Sols.*, No. 22-0296, 2023 WL 2472649, *3 (W.D.N.C. Feb. 8, 2023); *Cunningham v. Creative Edge Mktg. LLC*, No. 19-0669, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021); *Cunningham v. Politi*, No. 18-0362, 2019 WL 2519702, at *4 (W.D. Tex. April 26, 2019) ("Recent courts … have found § 227(c)(5) does not encompass Plaintiff's cellular phones and have dismissed his claims."); *see also Cunningham v. Spectrum Tax Relief, LLC*, No. 16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017), *rept. and rec. adopted*, 2017 WL 3220411 (M.D. Tenn. July 28, 2017) ("Plaintiff alleges only calls to his cellular phone. Accordingly, he fails to state a claim for relief

under 47 U.S.C. § 227(c)(5), and Count II of the Complaint should be dismissed.”).

Those decisions are consistent with the statute’s plain language and legislative purpose. Although cellphones existed when the TCPA was drafted, Congress intentionally limited the scope of the FCC’s rulemaking authority in Section 227(c)(1) by using specific language (“residential”) rather than general language (“personal telephones” or just “telephones.”). The plain meaning of “residential” in 1991 was “used as a residence or by residents.”[5] It follows that a “residential” phone is a landline that can only be “used by individuals in the home,” and is not “a cellular telephone, which can be used anywhere.” *Shelton*, 378 F. Supp. 3d at 362 n.7; *see also, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, No. 16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *rept. and rec. adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018) (“[T]he regulations implemented pursuant to Subsection 227(c) concern only the need to protect residential telephone subscribers’ privacy rights.”) (cleaned up); Automated Telephone Consumer Protection Act, S. Rep. No. 102-178, 102d Cong. at 9 (1991) (explaining that the proposed bill would protect the “personal privacy of residential telephone subscribers,” which is disturbed by “telemarketers who place telephone calls *to the home*.”) (emphasis added).

Those decisions are also consistent with the statute’s structure. Congress knew how to refer to wireless telephones when it meant to. Perhaps the best example of that is Section 227(b): whereas Section 227(b)***(1)(B)*** protects “residential” phones from annoyance by automated ***voices***, Section 227(b)***(1)(A)*** protects other phones—including wireless phones—from automated ***dialing***. It did so because of a meaningful difference between wireline and wireless phone plans in 1991: wireless phone subscribers would incur substantial per-minute charges for incoming calls. *See*

---

[5] *Residential*, Webster’s Ninth New Collegiate Dictionary (9th ed. 1988) (defining “residential” as “used as a residence or by residents” and “of or related to residence or residences”).

H.R. Rep. No. 102-317, at 10, 24 (1991); *Hr'g Before the Subcomm. on Commc'ns of the S. Comm. on Com., Sci., & Transp.*, 102d Cong. 6, 43 (1991); *Hr'g Before the Subcomm. on Telecomms. & Fin. of the H. Comm. On Energy & Com.*, 102d Cong. 113 (1991). In any event, Congress made considered judgments about what kinds of protections to afford to what kinds of phones, and about what language to use to do so. Overriding its judgments and ignoring its material variation in language would contradict time-honored canons of construction. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (citation omitted); *Law v. Siegel*, 571 U.S. 415, 422 (2014) (explaining that "words repeated in different parts of the same statute generally have the same meaning"); *see also Shelton*, 378 F. Supp. 3d at 362 n.7 ("Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d).").

A contrary reading of the statute has little to recommend it. Some courts have held that wireless phones can be considered "residential" depending on things like whether a phone is in the home at the time of a call, how a number is held out to the public, how often a phone is used for business or employment purposes, who usually pays the phone bill, and other things a "reasonable" person may deem relevant. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). Aside from being utterly atextual, that sort of test would chill speech by making compliance impossible, as callers cannot know those things when they are deciding whether to make a call. Requiring callers to know the unknowable—and to risk ruinous liability if they guess wrong—puts them in an untenable position. That matters because centuries of precedent dictates that the law cannot compel the impossible. *Dr. Bonham's Case*, 77 Eng. Rep. 638, 652 (C.P. 1610)

("[W]hen an Act of Parliament is…impossible to be performed, the Common Law will…adjudge such act to be void"). That principle is enshrined not only in due process protections, but also a canon of construction that counsels courts to avoid such questions. *See* U.S. Const. amends. V, XIV; *see also, e.g.*, *McNeil v. Time Ins. Co.*, 205 F.3d 179, 187 (5th Cir. 2000) ("It is a flawed and unreasonable construction of any statute to read it in a matter that demands the impossible."); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1529 (11th Cir. 1996) ("Our jurisprudence has eschewed the rigid application of a law where doing so produces impossible, absurd, or unjust results."); *Buck v. Harton*, 33 F. Supp. 1014, 1021 (M.D. Tenn. 1940) (finding statute requiring the impossible "unconstitutional, illegal and void"); 1 Blackstone's Commentaries at 87, 91 (1783) ("[T]he rules to be observed with regard to the construction of statutes are principally these… . Lastly, acts of parliament that are impossible to be performed are of no validity"). Indeed, even the TCPA's drafters knew that the statute should not impose liability for failing to do the impossible.[6] The Court should avoid that problem, adhere to the TCPA's plain language, and find that, as a matter of law, wireless numbers are not "residential" for purposes of Do-Not-Call claims.

***Second***, even if we assume for the sake of argument that a cellphone could be considered "residential" in certain circumstances, Plaintiff has alleged none of the facts that would warrant doing so. Indeed, his Complaint omits both his residence and his number. *See* Compl. ¶ 4 ("Plaintiff Marvin Dovberg is a natural person and resident of the Commonwealth of Pennsylvania.

---

[6] *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 19 FCC Rcd. 19215, 19218–19 ¶ 9 & n.32 (2004) (adopting safe harbor for calls to ported numbers because "it is impossible for telemarketers to identify immediately those numbers that have been ported from a wireline service to a wireless service provider"); *id.* ¶ 10 (explaining that information must be "available to the industry" and "disseminated to callers in order to comply with our rules."); *Hr'g on H.R. 628, H.R. 2131, & H.R. 2184 Before the Subcomm. on Telecomms. & Fin. of the H. Comm. on Energy & Commerce*, 101st Cong. 2 (1989) (statement of Rep. Edward J. Markey) ("[O]ur task is not to impose unreasonable burdens on telemarketers….").

He owns the personal cellular telephone number (215) XXX-XXXX."). And as for how he used that number, he offers conclusory statements rather than factual allegations. *Id.* ¶ 18 ("Plaintiff's telephone number is a non-commercial telephone number."); *id.* ¶ 19 ("Plaintiff uses the telephone number for personal, residential, and household purposes.").

Conspicuously absent are allegations about the sort of facts some courts have found relevant to whether a cellphone should be considered "residential," for example whether a phone was in the home at the time of a call, how a number is held out to the public, how often a phone is used for business or employment purposes, who usually pays the bill, or other relevant information. *See Chennette*, 50 F.4th at 1225. Particularly glaring here is the omission of information about whether (as Haller's research to date suggests) Plaintiff has a traditional landline at his home in addition to a wireless phone, which weighs against treating a cellphone as a "residential" number instead. *See Lee v. Loandepot.com, LLC*, No. 14-1084, 2016 WL 4382786, at *6–7 (D. Kan. Aug. 17, 2016) (entering summary judgment against plaintiff who had "maintain[ed] a landline at their residence" and had "not come forward with any evidence showing how he used his cellular phone").

It follows that Haller is entitled to the entry of judgment in its favor on this claim, either as a matter of law because cellphones are not "residential" no matter how they are used, or because Plaintiff failed to allege any facts suggesting that his phone should be deemed "residential."

## IV. Plaintiff's Caller ID Claim Fails Because There Is No Private Right of Action

Even if text messages were "telephone calls" and the relevant number was "residential," Plaintiff's Caller ID claim would still fail for at least four separate and independent reasons.

***First***, as many courts have held, there is no private right of action for violations of the Caller ID regulations. *See Tom v. Delancey St. Grp. LLC*, No. 26-1150, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026) (following the "majority approach" that there is "no private right of

action"); *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 24-0243, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024); *Dobronski v. Tobias & Assocs., Inc.*, No. 23-10031, 2024 WL 1174553, at *4 (E.D. Mich. Mar. 18, 2024); *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021); *Dobronski v. SelectQuote Ins. Servs.*, 462 F. Supp. 3d 784, 789 (E.D. Mich. 2020); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6 (E.D. Mich. Jul. 7, 2020); *Meyer v. Cap. All. Grp.*, No. 15-2405, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. 16-2133, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Transamerica Life Ins. Co.*, 347 Mich. App. 92, 114 (2023).

Those decisions are persuasive. Section 227(c)(5) provides a private right of action only if a person receives multiple calls that violated "the regulations prescribed under this subsection"—i.e., under Section 227(c). *See* 47 U.S.C. § 227(c)(5). In other words, there is no private right of action if the relevant regulation was not prescribed under Section 227(c).

The Caller ID regulations in Section 64.1601(e) were not. For starters, the FCC knew how to identify the source of its regulatory authority when it wished to provide for a right of action. Take, for example, the Do-Not-Call regulations in 47 C.F.R. § 64.1200(c)–(e). When it prescribed those in 2003, the FCC stated that it was doing so pursuant to its "authority under section 227(c)." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14034 (2003). Contrast that with the Caller ID rules in 47 C.F.R. § 64.1601(e). When it prescribed those regulations—in the same order in 2003—the FCC said nothing of the sort. Instead, it focused instead on transmission capability, network technology, technical feasibility, and coordination with the FTC. *See id.*, 18 FCC Rcd. at 14121, 14118–19. Its description is consistent with a technical rule that, while supportive of Section 227(c), was prescribed under Section 227(d).

It makes sense that the FCC would not have identified Section 227(c) as the source of its regulatory authority to prescribe the Caller ID regulations, as Section 227(c) focuses on privacy issues as opposed to procedural issues. *Compare* 47 U.S.C. § 227(c) ("Protection of subscriber privacy rights") *with id.* § 227(d) ("Technical and procedural standards"). Indeed, Section 227(c) only authorizes the FCC to prescribe regulations that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). That is not a natural fit for Caller ID regulations, which by their nature apply only ***after*** a subscriber has received a solicitation. By contrast, Section 227***(d)*** authorizes the FCC to prescribe regulations that set "technical and procedural standards" for outbound communications. *Id.* § 227(d)(1)(a). That is a more natural fit for regulations regarding the inclusion of identifying information.

Indeed, Congress specifically referenced identification requirements in Section 227(d) when it authorized the FCC to set such standards for sending telephone facsimile transmissions. *See id.* § 227(d)(2) ("The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine . . . clearly marks . . . an identification of the business . . . sending the message, and the telephone number of the sending machine or of such business. . . ."). There is no principled reason why the authority for setting similar standards for calls or text messages should derive from some other part of Section 227.

The text and structure of Section 64.1601 bears that out. Indeed, only one of its subsections (subsection b, not subsection e) has a heading that mentions "Privacy." The headings of the other subsections mention "Delivery," "Charges," "Exemptions," or—as is the case in subsection (e)—nothing at all. *See* 47 C.F.R. § 64.1601. The FCC knew how to signal that it believed it was regulating pursuant to its authority under Section 227(c) but chose not to do so when drafting the Caller ID regulations in Section 64.1601(e). For good reasons, courts disfavor creating rights by

implication if (as in this case) they were not created expressly. *See Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (calling it "highly improbable" that Congress "absentmindedly forgot to mention an intended private action."); *see also Dobronski*, 347 Mich. App. at 112 ("Courts do not lightly infer a private right of action where the statutory basis for one is unclear.").

The enactment of the Truth in Caller ID Act in December 2010 supports this conclusion. *See* 47 U.S.C. § 227(e). Pub. L. No. 111-331, 124 Stat. 3572 (Dec. 22, 2010). That law created Section 227(e) of the TCPA, which addresses caller ID information. Section 227(e) specified the enforcement consequences: FCC civil forfeitures and criminal penalties under Section 227(e)(5), and civil actions by state attorneys general under Section 227(e)(6). Congress did not create a private right of action for violations of subsection (e), even though it had done so elsewhere in Section 227. Its remedial design confirms its choice to leave Caller ID enforcement to regulators. It would be anomalous to infer a private remedy for Section 64.1601(e) from Section 227(c)(5) when Congress later enacted a caller-ID-specific provision and again omitted a private remedy.

Although a minority of courts has in the last year adopted the theory that Caller ID is a "network technology" within Section 227(c)(1)(A), that provision only authorized the FCC to "compare and evaluate" technologies and other methods for protecting privacy; it did not direct the FCC to promulgate a privately enforceable regulation for every technology it considered. Indeed, in 1992 the FCC declined to require Caller ID due to cost and technological uncertainty. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8762, ¶ 17 (1992). When the FCC finally adopted Section 64.1601(e) in 2003, it described it as an enforcement resource for the FCC and FTC, not as a regulation implementing Section 227(c)'s privacy protections with a private remedy.

For all of these reasons—the TCPA's language and structure, the FCC's characterization of the Caller ID regulation, the legislature's subsequent enactment of § 227(e) without a private right of action, and the weight of authority—§ 64.1601(e) is best understood as a technical and procedural standard that was prescribed under Section 227(d). It follows that it cannot be enforced through Section 227(c)(5)'s private right of action. This claim therefore fails as a matter of law.

***Second***, even if a private right of action existed, Plaintiff's own allegations show that the text messages complied with the letter and spirit of the regulation by identifying Haller by name. The only alleged defect identified in the Complaint is that, if one were to go out of their way to query the database of Haller's telecommunications carrier, that database would identify the sender as "MIDDLETOWN, PA," rather than "Haller Enterprises." But the Complaint also confirms that the text messages themselves included both the sender's name and number. *See* Compl. ¶ 22.

The regulation cited in the Complaint does not require more than that. On the contrary, Section 64.1601(e) merely requires that senders "must transmit caller identification information," which it defines as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e). CPN and ANI both refer to a sender's number; CPN stands for "calling party number" and "ANI" stands for "automatic numbering information." *Id.* § 64.1601(a)(1). Read together, then, all Section 64.1601(e) requires is that the sender transmit its name and number, which the messages here did. *See supra*.

Imposing statutory damages for an alleged imperfection in a telecommunication provider's database—when the sender was plainly identified in the first sentence of the texts—would be inconsistent with the regulatory objective the FCC articulated when it adopted Section 64.1601(e). The FCC chose to require Caller ID because it wanted to allow consumers to "screen out unwanted calls" and "identify companies that they wish to ask not to call again." *In re Rules & Reguls.*, 18

FCC Rcd. 14014, 14118–19, ¶¶ 124. Plaintiff's allegations establish that the text messages at issue here satisfied the Caller ID requirements in multiple, mutually reinforcing ways. Plaintiff clearly knew who the text messages were from: the Complaint contains screenshots that show the first message began "Hey Marvin and Barbara, this is Haller Enterprises," and the second began "Hi Marvin and Barbara, Haller Enterprises here!" Compl. ¶ 22. It does not allege that the originating number displayed in these screenshots is inaccurate. And the text messages contain referral links with "haller-enterprises" and instruct the recipient, "Reply STOP to opt out." *Id.* Unlike the text message at issue in *Newell v. JR Capital, LLC*, here there was no requirement to click an ambiguous link in the body of the text to identify its sender. *See* 791 F. Supp. 3d 571, 584–85 (E.D. Pa. 2025). Plaintiff was able to identify the originating number, the identity of the company contacting him, and was able to submit a request to stop further contact at any time during or outside of regular business hours without having to look up a number or navigate to a website.

***Third***, Plaintiff's claim is barred because he is outside the "zone of interests" protected by the TCPA's Do-Not-Call provisions. The Supreme Court recently reiterated that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Controls Components, Inc.*, 572 U.S. 118, 129 (2014); *see also id.* at 129 n.6 ("Statutory causes of action are regularly interpreted to incorporate standard common-law limitations on civil liability—the zone-of-interests test no less than the requirement of proximate causation. . . ."). In other words, a plaintiff's injuries must implicate "precisely the sorts of . . . interests" that the relevant statutory provision was meant to protect. *Id.* at 129. This test derives from the common law rule that plaintiffs cannot recover in negligence for violation of a statute unless that statute was "designed to protect the class of persons in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of

its violation." *Id.* at 129 n.5 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 36 (5th ed. 1984)); *see also, e.g.*, *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.").

Here, Plaintiff's own allegations make it clear that he was not even aware of the alleged incompleteness of Caller ID information until after he had already retained counsel to file suit. Indeed, it was only after gaining access to a telecommunications carrier's database of Caller ID information that his counsel learned they might be able to assert this second claim. Compl. ¶ 27 ("Counsel for Plaintiff has access to 'dip' the Caller ID database of the calling carrier to ascertain . . . whether such CNAM information contained the name of the telemarketer."). Although Plaintiff suggests he was harmed because he was "not able to use Caller ID information to readily ascertain who was calling him," that cannot be squared with his allegations, which show that the substance of the text messages accurately identified Haller and its number, and this supposed shortcoming was not discovered until later. *See, e.g.*, *id.* ¶ 22. It follows that Plaintiff's claim fails as a matter of law because he is not within the zone of interests protected by this part of the statute.

***Finally***, finding a cognizable injury in a case like this would make a mockery of the TCPA. Doing so would ignore the maxim *de minimis non curat lex*, which means "the law does not concern itself with trifles." That rule is "part of the established background of legal principles against which all enactments are adopted. . . ." *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992) (citation omitted); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded."). Allowing claims such as this would expose small businesses and local employers to potentially annihilating aggregate liability

despite having included complete and accurate information in the substance of a message. That is an attractive notion for anyone interested in filing class action lawsuits to be sure, but not for anyone interested in providing or paying for goods and services.

## CONCLUSION

For the foregoing reasons, Haller respectfully requests that the Court: (a) enter judgment in favor of Haller and against Plaintiff; and (b) grant Haller other relief it deems just and proper.

Dated: September 23, 2026

*/s/ Michael P. Daly*

Michael P. Daly (PA ID 86103)
Michelle A. Paninopoulos (PA ID 329738)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Phone: 215-988-2700
Fax: 215-988-2757
michael.daly@faegredrinker.com
michelle.paninopoulos@faegredrinker.com

Matthew M. Morrissey (*pro hac vice* pending)
Stacy N. Massey (*pro hac vice* pending)
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
matthew.morrissey@faegredrinker.com
stacy.massey@faegredrinker.com

*Attorneys for Defendant*
*Haller Enterprises, Inc.*