**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARVIN DOVBERG,<br><br>Plaintiff,<br><br>v.<br><br>HALLER ENTERPRISES, INC.,<br><br>Defendant. | Civil Action No. 5:26-cv-04286-JFL |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Michael P. Daly (PA ID 86103)
Michelle A. Paninopoulos (PA ID 329738)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Phone: 215-988-2700
Fax: 215-988-2757
michael.daly@faegredrinker.com
michelle.paninopoulos@faegredrinker.com

Matthew M. Morrissey (*pro hac vice*)
Stacy N. Massey (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
matthew.morrissey@faegredrinker.com
stacy.massey@faegredrinker.com

*Attorneys for Defendant*
*Haller Enterprises, Inc.*

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................ 1

I. Plaintiff's Claims Both Fail Because Text Messages Are Not "Telephone Calls" ........................................................................................................................ 1

II. Plaintiff's Do-Not-Call Claim Fails Because His Cellphone Is Not "Residential" ........................................................................................................................ 4

III. Plaintiff's Caller ID Claim Fails Because There Is No Private Right of Action .... 7

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Agostini v. Felton*,
521 U.S. 203 (1997)....................9

*Ankrah v. Streamline Funding, LLC*,
No. 26-0784, 2026 WL 3027138 (N.D. Ga. Sept. 29, 2026)....................7

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026)....................7

*Brown v. Hursh Grp., LLC*,
No. 26-0185, 2026 WL 2906613 (D. Colo. Sept. 28, 2026)....................7

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)....................2

*Dobronski v. Tony Packo's Toledo, LLC*,
No. 25-13117, 2026 WL 2969611 (E.D. Mich. Oct. 2, 2026)....................5, 7

*Dominguez v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018)....................2

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................2

*FDA v. R.J. Reynolds Vapor Co.*,
606 U.S. 226 (2025)....................9

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013)....................2

*Internicola v. MortgagePros, LLC*,
No. 25-1613, 2026 WL 3027393 (M.D. Fla. Sept. 24, 2026)....................7, 8

*Koeller v. OX AppSec Sec., Inc.*,
No. 25-0641, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026)....................7

*Lowrey v. Twilio, Inc.*,
No. 25-0116, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026)....................7

*Novia v. Mobiz, Inc.*,
No. 25-11036, 2026 WL 752181 (D. Mass. Mar. 17, 2026)....................9

*Pero v. Brown-Daub Chevrolet of Nazareth*,
No. 25-7016, 2026 WL 1747214 (E.D. Pa. June 17, 2026)....................3

*Perrong v. Victory Phones LLC*,
No. 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021) ....................................................9

*Phillips v. GJD Stars Inc.*,
No. 26-61910, 2026 WL 3060556 (S.D. Fla. Sept. 18, 2026) ................................................7

*Radvansky v. 1st Class Med.*,
No. 25-3796, 2026 WL 2858562 (D. Colo. Sept. 23, 2026)...................................................7

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 199*1,
18 FCC Rcd. 14014 (2003) ........................................................................................1, 7, 8

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) ..........................................................................................4

*Susinno v. Work Out World Inc.*,
862 F.3d 346 (3d Cir. 2017)..............................................................................................5

**Statutes, Rules & Regulations**

47 C.F.R. § 64.1200(c)(2)..................................................................................................6

47 C.F.R. § 64.1200(e).....................................................................................................7

47 C.F.R. § 64.2305(d) .................................................................................................5, 6

47 C.F.R. § 69.104 ..........................................................................................................6

47 U.S.C. § 227(b)(1)(A)(iii).............................................................................................3

47 U.S.C. § 227(c)(1)...................................................................................................1, 6

47 U.S.C. § 227(c)(2)........................................................................................................8

47 U.S.C. § 227(c)(5)................................................................................................1, 3, 4

47 U.S.C. § 227(g) ............................................................................................................4

47 U.S.C. § 151 *et seq*......................................................................................................8

15 U.S.C. § 6151 *et seq*....................................................................................................8

Fed. R. Civ. P. 1 ...............................................................................................................1

**Other Authorities**

137 Cong. Rec. 30821 (1991) .............................................................................................6

7 FCC Rcd. 8752 (1992)....................................................................................................8

18 FCC Rcd. at 14142–43 ¶ 222 ........ 8

18 FCC Rcd. at 14150 Appendix A ........ 8

Jonathan Rabinovitz, *Teen-Agers' Beepers: Communications as Fashions*, N.Y. Times (Mar. 8, 1991) ........ 3

S. Rep. No. 102-178 (1991) ........ 6

## ARGUMENT

Haller's Motion establishes that Plaintiff's claims fail for three reasons: the private right of action in Section 227(c)(5) applies to "telephone calls" rather than text messages; the Do-Not-Call rules in Section 227(c)(1) apply to "residential" subscribers rather than cellphone subscribers; and the Caller ID rules were not "prescribed under" Section 227(c) and thus do not trigger a private right of action. Plaintiff's responses do not withstand scrutiny.[1]

## I. Plaintiff's Claims Both Fail Because Text Messages Are Not "Telephone Calls"

Haller's Motion explains that both claims in this case fail because the private right of action in Section 227(c)(5) applies only to "telephone calls," which should not be read as extending to text messages. *See* Mot. at 4-11.

In response, Plaintiff suggests that "telephone call" should be interpreted as extending to "any attempt to communicate by telephone." Opp'n at 1. But that proves too much. Indeed, that reading would sweep in email messages, direct messages via social media, app alerts, AirDrops, and Bluetooth transfers—none of which fall within the plain meaning of the term "telephone call."

Plaintiff also argues that public policy weighs in favor of reading the statute as extending to technology that was never within the contemplation of Congress. Opp'n at 10 (noting that text messages are now "a predominant form of technology" used for communicating with customers). But that too is wrong, as the Supreme Court has held that even if the TCPA is limited to technology

[1] Nor does his suggestion that the Motion should be denied because it "repeatedly invokes matters outside the pleadings." Opp'n at 3; *see also id*. at 23. On the contrary, the Motion stated that it "relies only on the facts alleged in the Complaint" and acknowledged that the timeline reflected in its records would only be relevant "if this case continues beyond the pleadings stage." Mot. at 1 n.1 & 2. There is nothing improper about alerting counsel that an allegation may be inaccurate. Indeed, the rules expect as much. *See* Fed. R. Civ. P. 1. And although this is an academic point, Plaintiff is also wrong to say that the 18-month period for the "established business relationship" exception is measured from the last "purchase" or provision of "service." On the contrary, the FCC's own Order says it runs from the last "payment or financial transaction, even if the company does not currently provide service to that customer." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14080 ¶ 113 (2003) ("2003 Order").

that is "senescent," it is not the role of the courts to update the statute for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021).[2] If Plaintiff believes that the TCPA should provide a right of action for unsolicited text messages, "[his] quarrel is with Congress." *Id.*

Relatedly, Plaintiff suggests Haller's reading would exempt smartphones from the statute, "because nearly every modern telephone can send texts." Opp'n at 9. That is sleight of hand. Haller does not argue that a device is categorically beyond the statute's reach so long as it can send a text message. Rather, Haller simply contends that text messages ***themselves*** do not trigger a private right of action. Actual telephone calls made with a smartphone still do.

Plaintiff also repeatedly suggests that this issue has already been decided by both the Supreme Court and the Third Circuit. Opp'n at 1. It has not. When the Supreme Court said this issue was "undisputed," *id.* at 4, it meant that the parties had not disputed the issue, ***not*** that it is indisputable. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Indeed, a later decision states quite clearly that the Court has not decided the issue. *Facebook,* 592 U.S. at 400 n.2. Similarly, while the Third Circuit and other courts have "treated" text messages like telephone calls when no one argued otherwise, Opp'n at 4, the rulings Plaintiff cites held nothing of the sort.[3]

Next, Plaintiff says Haller is applying "modern colloquial intuitions" to an older statute. Opp'n at 1. That is a straw man. Haller does not merely contend that people ***"today"*** do not refer to text messages as telephone calls. *Id.* at 7. Rather, it argues that people have ***never*** done that—

---

[2] Plaintiff suggests that his reading would not rewrite the statute because text messages are merely a subset of the broader category of "calls." Opp'n at 11. But that is putting the rabbit in the hat, as Haller's central argument is that "telephone calls" and text messages are categorically different.

[3] *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 (3d Cir. 2018) ("The only issue on appeal is whether a reasonable trier of fact could find Yahoo's system qualifies as an 'automatic telephone dialing system'"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) ("We are asked to resolve two issues today: (1) whether the TCPA allows a consumer to revoke her 'prior express consent' to be contacted via an automated telephone dialing system on her cellular phone and (2) if a revocation right exists, whether there is a temporal limitation on that right.").

including when the law was passed in 1991. *See* Mot. at 5-6. In suggesting otherwise, Plaintiff discusses the definitions of "call" (in his view, any communication) and "telephone" (in his view, a mere piece of equipment) in isolation. Opp'n at 8. But the statute uses them ***in combination***. Section 227(c)(5) does not apply to 'any communication that is made with a telephone.' Rather, it applies only to "telephone calls"—a term that has ***never*** been understood to mean a text message.

Relatedly, Plaintiff points to a separate part of the TCPA that prohibits using an autodialer to "call" a pager. Opp'n at 9 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). But that cuts the other way, as "calls" to pagers were initiated by dialing a telephone number. The fact that they displayed text on the receiving end does not change the fact that the communications began with telephone calls. Not surprisingly, then, it was common parlance in 1991 to say that someone had "called" a pager.[4] A text message, by contrast, is neither initiated nor transmitted as a telephone call.

Plaintiff then tries to rehabilitate *Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 WL 1747214 (E.D. Pa. June 17, 2026), one of the few decisions on this issue from this Court. Haller's Motion explains that *Pero* is unpersuasive because it analyzed whether text messages are "telephone ***solicitations***" rather than whether they are "telephone ***calls***." That does not matter, according to Plaintiff, because the FCC's regulation speaks in terms of "telephone solicitations." Opp'n at 6. That misses the point. The question is not whether there was a violation of a regulation drafted by the FCC, but whether there is a right of action under a statute drafted by Congress.

Next, Plaintiff concedes that text messages "can be sent from one computer to another with no phone at either end." Opp'n at 9. But he says that does not matter here because it "describes a case not before the Court." That is beside the point. Haller does not suggest that the messages at

---

[4] *See, e.g.*, Jonathan Rabinovitz, *Teen-Agers' Beepers: Communications as Fashions*, N.Y. Times (Mar. 8, 1991) ("The telephone pagers will signal incoming calls with a high-pitched chirp, and then the owner can look at the beeper to read the number of the person who is calling.").

issue here were sent or received by a computer. Rather, it pointed out that Plaintiff is asking the Court to extend the meaning of "telephone call" to messages that do not even require telephones. His reading thus does not merely "accommodate developments in light of advances in technology," Opp'n at 10; it divorces the private right of action from the statutory text altogether.

Finally, Plaintiff urges the Court to adopt his limitless reading of "telephone call" because a contrary reading would allow callers to ignore regulations "without consequence." Opp'n at 1; *see id.* at 13 (referring to a supposed "enforcement gap"). But consequences are set by Congress, which expressly limited the private right of action to "telephone calls." *See* 47 U.S.C. § 227(c)(5). Despite having had 35 years to amend the private right of action to include text messages, Congress has not done so. What's more, Plaintiff would have the Court ignore the enforcement function of attorneys general and regulators. *See* 47 U.S.C. § 227(g). As the Seventh Circuit explained, text messages "may be curbed through agency action pursuant to other provisions of § 227, which we leave undisturbed." *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026). Simply put, there is no enforcement gap, and even if there were it would be one made by Congress. That would not warrant disregarding the statute's plain language.

## II. Plaintiff's Do-Not-Call Claim Fails Because His Cellphone Is Not "Residential"

Haller's Motion also explains that Plaintiff's Do-Not-Call claim fails because those rules apply to "residential" subscribers rather than cellphone subscribers. *See* Mot. at 11-16.

In response, Plaintiff argues that whether a subscriber is "residential" for purposes of the Do-Not-Call rules "turns on how the subscriber uses the number." Opp'n at 1; *see also id.* at 17. As Haller explains in its Motion, however, that would chill speech because it would make it impossible for callers to know whether a call would trigger potential liability. *See* Mot. at 14-15.

That does not matter, according to Plaintiff, because callers can simply check if a number is on the Do-Not-Call Registry. *See* Opp'n at 21. But the statute provides for liability only if a

number is registered ***and*** is "residential."[5] If a caller cannot tell whether a number is "residential," it cannot tell whether a call will trigger liability. Plaintiff argues that litigants should be allowed to explore how a number is being used in discovery. *Id.* at 22. But that has things backwards, as discovery comes after calls have been made, speech has been chilled, and suits have been filed.

Next, Plaintiff suggests that the Third Circuit's decision in *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017), already rejected these arguments. Opp'n at 21-22. He is wrong. As for the statute's application to cellphones, *Susinno* concerned automated calls and a claim under Section 227(b), not text messages and a claim under Section 227(c) as in this case. *See Susinno*, 862 F.3d at 348 ("WOW argues that the TCPA does not prohibit a single prerecorded call to a cell phone if the phone's owner was not charged for the call."). And as for constitutional issues, *Susinno* concerned whether Section 227(b)(1) is "void for vagueness." *Id.* at 349 n.1. Plaintiff either misunderstands or misrepresents Haller's argument. Haller does not argue that the provision at issue here is vague. Rather, it argues that Plaintiff's proffered reading of that provision would require the impossible. Mot. at 14-15. The *Susinno* decision says nothing at all about this issue.

Plaintiff further contends that "residential subscriber" includes cellphones because that term is "defined by the FCC regulations." Opp'n at 17. That is wrong for at least two reasons. First, the regulation he cites is found in—and expressly limited to—a different subpart of the code that was promulgated to implement a different statute with a different purpose. *See* 47 C.F.R. § 64.2305(d) ("Terms ***used in this subpart*** have the following meanings. . . .") (emphasis added); *id.* § 64.2301 ("The purpose of these rules is to implement section 222(e) of the Communications Act of 1934," which requires telecommunications carriers to "provide subscriber list information

[5] As a recent decision explains, the relevant time is when the number was placed on the registry. If a number was not "residential" at that time, there can be no claim under the Do-Not-Call rules. *See Dobronski v. Tony Packo's Toledo, LLC*, No. 25-13117, 2026 WL 2969611, at *6-7 (E.D. Mich. Oct. 2, 2026). Plaintiff alleges nothing at all about his use of the number at that time.

. . . for the purpose of publishing directories"). Second, that definition sheds no light on whether a subscriber is "residential." Rather, it simply states that a "residential subscriber" is any subscriber that is not a "business subscriber." *Id.* § 64.2305(d).[6]

Notably, Plaintiff also offers no clear test for determining if a subscriber is "residential." His position seems to be that "residential" is "simply the opposite of 'business.'" Opp'n at 17-18. In his view, "residential" and "telephone" both modify "subscriber" and therefore "describe the type of subscriber protected" rather than the type of telephone used. *Id.* at 18. But that is wrong, as the word "residential" modifies "telephone." The word "subscriber" comes next, and therefore simply refers to the owner of the "residential telephone." *See* 47 U.S.C. § 227(c)(1) ("[T]he [FCC] shall initiate a rulemaking proceeding concerning . . . residential telephone subscribers' privacy rights"); 47 C.F.R. § 64.1200(c)(2) (regulating calls to a "residential telephone subscriber").

Plaintiff is also wrong to suggest that nothing in the TCPA or its legislative history indicates that Congress understood "residential telephone subscriber" to mean traditional home telephones. *See* Opp'n at 18 ("Nothing in the text suggests that Congress conditioned recovery on the presence of a physical wire."). On the contrary, the chief architect of the TCPA, Senator Fritz Hollings, explained that the statute was aimed at automated calls to "residential subscribers" because such calls make them "want to rip the telephone right out of the wall." 137 Cong. Rec. 30821 (1991); *see also* S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968 (stating that the autodialer restrictions would "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home"). Indeed, as one court recently explained after examining the FCC's contemporaneous

[6] Plaintiff also cites 47 C.F.R. § 69.104, which is found in an entirely different part of the code (part 69 rather than part 64) that regulates telecommunications access service charges, and is not even part of its definitional section. Opp'n at 17. His reliance on it is equally misplaced.

publications, even the FCC knew cellphones were not "residential" from "the date of enactment of the TCPA through 2003," at which point it did an about face due to their widespread adoption. *Anthony v. Brian Mktg. Grp.*, No. 24-80800, 2026 WL 2685650, at *10 (S.D. Fla. Sept. 11, 2026).

Plaintiff also argues that Haller's reading of this provision would "render [it] a nullity." Opp'n at 19. His point is that the FCC's Do-Not-Call regulation applies to "telemarketing calls or text messages to wireless telephone numbers," 47 C.F.R. § 64.1200(e), and therefore there must be a private right of action for the latter. But what the FCC wrote in its regulation has no bearing on what Congress meant wrote in its statute. Because Congress used the word "residential" rather than "personal" or something similarly broad, the Do-Not-Call rules do not apply here.

## III. <u>Plaintiff's Caller ID Claim Fails Because There Is No Private Right of Action</u>

Finally, Haller's Motion explains that the Caller ID claim fails because there is no private right of action for violations of the Caller ID rules and Haller complied with them in any event. *See* Mot. at 16-23. In response, Plaintiff suggests that "nearly every court to consider the question since *Dobronski*" has agreed with him. Opp'n at 2. That is not only irrelevant but also inaccurate, as one recent ruling found no private right of action for violations of the regulations that were adopted in the 2003 Order that produced the Caller ID rules.[7]

[7] *See Internicola v. MortgagePros, LLC*, No. 25-1613, 2026 WL 3027393, at *3-4 (M.D. Fla. Sept. 24, 2026). Other recent rulings—including several in cases filed by Plaintiff's counsel—have also sided with defendants on whether text messages are "telephone calls" or whether cellphones are "residential." *Lowrey v. Twilio, Inc.*, No. 25-0116, 2026 WL 2958730, at *5-7 (W.D. Va. Oct. 1, 2026); *Koeller v. OX AppSec Sec., Inc.*, No. 25-0641, 2026 WL 2935851, at *2-3 (E.D. Mo. Sept. 30, 2026); *Ankrah v. Streamline Funding, LLC*, No. 26-0784, 2026 WL 3027138, at *2 (N.D. Ga. Sept. 29, 2026); *Brown v. Hursh Grp., LLC*, No. 26-0185, 2026 WL 2906613, at *2-3 (D. Colo. Sept. 28, 2026); *Radvansky v. 1st Class Med.*, No. 25-3796, 2026 WL 2858562, at *2 (D. Colo. Sept. 23, 2026); *Phillips v. GJD Stars Inc.*, No. 26-61910, 2026 WL 3060556, at *2-5 (S.D. Fla. Sept. 18, 2026); *Anthony*, 2026 WL 2685650, at *5-12 & n. 16.

In any event, Plaintiff's position is wrong because it assumes that the authority to adopt the Caller ID rules necessarily derived from a part of Section 227. Working through its subsections, he says that "[o]nly Section 227(c) fits." Opp'n at 24. But even if Section 227(c) were a good fit (and it is not, *see* Mot. at 17–20) and even if the FCC had said it was acting under Section 227(c) (which it did not, *see id.*), the argument would still fail because, as one court recently explained, Section 227(c)'s grant of authority expired a decade before the Caller ID rule was adopted. *See Internicola*, 2026 WL 3027393, at *4.

Congress limited the FCC's rulemaking authority under Section 227(c) by requiring it to "conclude the rulemaking proceeding" and "prescribe regulations" no later than "9 months after December 20, 1991." 47 U.S.C. § 227(c)(2). When it completed its Section 227(c) proceeding on September 17, 1992, it chose not to adopt a Caller ID rule. 7 FCC Rcd. 8752, 8762 ¶ 17 (1992). It did not reverse course and adopt Section 64.1601(e) until 2003—more tan a ***decade*** after its Section 227(c) authority had lapsed. 2003 Order, 18 FCC Rcd. at 14142–43 ¶ 222, 14150 app. A. It follows that the Caller ID rules could not have been "prescribed under" Section 227(c).

The actual source of the FCC's authority is an interesting question. One possible source is Section 227(d), which imposed no deadline for the FCC's rulemaking. Other possibilities include the Do-Not-Call Implementation Act, 15 U.S.C. § 6151 *et seq.*, or Sections 1–4, 222, 227, and 303(r) of the Communications Act, 47 U.S.C. § 151 *et seq.*, which were cited in the 2003 Order. *See* 18 FCC Rcd. at 14142–43 ¶ 222; *see also id.* at 14027 ¶ 15. Indeed, as Plaintiff acknowledges, the Do-Not-Call Implementation Act is the statute that "directed the FCC" to conduct "the very rulemaking proceeding" that produced the 2003 Order. Opp'n at 19. Ultimately, though, all that matters for present purposes is whether the rule was prescribed under Section 227(c). It was not.

Haller's Motion further explains that this claim fails for the additional reason that Plaintiff could see the name and number of the caller without having to open the messages, and therefore is not within the zone of interests protected by the Caller ID rules. *See* Mot. at 20-22. In response, Plaintiff suggests that Haller's argument is premised on a doctrine the Supreme Court has "retired." Opp'n at 31. In support, he cites a law review article that says the Supreme Court's 2020 decision in *Bostock* overruled its 2014 decision in *Lexmark*. *See id.* at 32 (citing article). But that would come as a surprise to the Supreme Court, which made no mention of *Lexmark* in *Bostock*, and which follows *Lexmark* to this day. *See FDA v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 232 (2025). It would also ignore the rule that Supreme Court precedent is not overruled by implication. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997).

Indeed, Plaintiff's own authority applied the *Lexmark* test after *Bostock*, holding only that the specific challenge in that case—which involved the plaintiff's status as a serial plaintiff—turned on factual issues that required discovery. *Perrong v. Victory Phones LLC*, No. 20-5317, 2021 WL 3007258, at *3–5 (E.D. Pa. July 15, 2021). Plaintiff's reliance on *Novia v. Mobiz, Inc.*, No. 25-11036, 2026 WL 752181, at *2–3 (D. Mass. Mar. 17, 2026), is similarly misplaced because it concerned the court's Article III standing rather than the statute's zone of interests.

In any event, Haller agrees that the zone-of-interests test is "grounded in the statute's text." Opp'n at 32. That is exactly where it grounds its argument. *See* Mot. at 18, 20. Haller argues that a plaintiff is outside the zone of interests of the Caller ID rules if he is able to identify a caller's name and number without opening a message. In suggesting that he could not, Plaintiff points to screenshots from his phone that "identified the sender of the messages only by a number, with no name." Opp'n at 33; *see also id.* at 31 n.2. But that is simply not the case, as both messages identified Haller by name. *See* Compl. ¶ 22 ("Hi Marvin and Barbara, this is Haller Enterprises.");

*id.* ("Hi Marvin and Barbara, Haller Enterprises here!"). Indeed, they did so in the first few words, which should be visible in a phone's preview page—which he omitted from his Complaint—without opening a message. It follows that he is not within the Caller ID rules' zone of interests.

**CONCLUSION**

For the foregoing reasons, Haller respectfully requests that the Court: (a) enter judgment in favor of Haller and against Plaintiff; and (b) grant Haller other relief it deems just and proper.

Dated: October 14, 2026

*/s/ Michael P. Daly*

Michael P. Daly (PA ID 86103)
Michelle A. Paninopoulos (PA ID 329738)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Phone: 215-988-2700
Fax: 215-988-2757
michael.daly@faegredrinker.com
michelle.paninopoulos@faegredrinker.com

Matthew M. Morrissey (*pro hac vice*)
Stacy N. Massey (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
matthew.morrissey@faegredrinker.com
stacy.massey@faegredrinker.com

*Attorneys for Defendant*
*Haller Enterprises, Inc.*

**CERTIFICATE OF SERVICE**

I, Michelle A. Paninopoulos, hereby certify that, on October 14, 2026, I electronically filed the foregoing Reply in Support of Motion for Judgment on the Pleadings with the clerk of the court for the U.S. District Court, Eastern District of Pennsylvania, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record.

Dated: October 14, 2026

*/s/ Michelle A. Paninopoulos*

Michelle A. Paninopoulos